IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FRANK TURNEY, JR., et al., )
)
        Plaintiffs, )
)
v. )   Case No. 09-2533-JWL
)
FIFTH THIRD BANK, et al., )
)
        Defendants. )
)
_____)

## **MEMORANDUM AND ORDER**

By their second amended complaint, seven plaintiffs seek a declaratory judgment and assert claims against seven defendants arising out of plaintiffs' purchase of insurance franchises from Brooke Capital Corporation and related entities (collectively, "Brooke" or "the Brooke entities"), including defendant Aleritas Capital Corporation ("Aleritas"). The six defendants other than Aleritas are banks that, according to plaintiffs, provided financing to Brooke and now seek to enforce loans made by Brooke to plaintiffs to finance the franchise purchases.

Defendant DZ Bank AG Deutsche Zentral Genossenschaftsbank ("DZ Bank") has moved to dismiss plaintiffs' second amended complaint and also seeks summary judgment on the claims against it (Doc. # 47). The following defendants have joined DZ Bank's motion to the extent it seeks dismissal on the pleadings: UniCredit AG, formerly known as Bayerische Hypo–und Vereinsbank, AG ("HVB") (Doc. # 48); Fifth Third

Bank ("Fifth Third") (Doc. # 49); NCMIC Finance Corporation ("NFC") (Doc. # 50); Arvest Bank ("Arvest") (Doc. # 52); and Aleritas (Doc. # 57). For the reasons set forth below, the Court **denies** DZ Bank's motion for summary judgment, and it **grants** defendants' motions to dismiss the second amended complaint, although plaintiffs are granted leave to file another amended complaint, on or before **May 14, 2010**, by which they may attempt to cure the pleading deficiencies noted herein.

### I. Plaintiffs' Claims

In their second amended complaint, plaintiffs allege as follows: Plaintiffs entered into transactions with "one or more" of the Brooke entities for the purchase of insurance franchises in Texas. Brooke would identify and bring together insurance agencies wishing to buy and sell books of business. Brooke purported to conduct due diligence for buyers and would set the purchase prices, but Brooke inflated those prices by misrepresenting the true commission revenue streams for the franchises. Brooke required the sellers to assign their rights in the sales to it, and thus Brooke became the seller and franchisor. Buyers were also required to finance the purchases through a Brooke entity.

Brooke in turn financed this operation by borrowing from defendant banks, who took security interests in the franchise accounts and sales commissions. The banks delegated servicing responsibilities for the loans to a company that then delegated those responsibilities to a Brooke entity. In reliance on their security interests, the banks ceded

2

control of underwriting, approval, and servicing to Brooke, with little oversight, despite obvious conflicts of interest.

In mid-2008, Brooke collapsed, as they ceased remitting payments to plaintiffs and defaulted on their obligations to the banks, who filed suit against Brooke. "In mid-October 2009, each Plaintiff received a letter from the Defendant Bank now ostensibly holding their 'notes' or a portion of their 'notes' for funds borrowed to purchase their Brooke franchise. The letters offered to terminate the Franchise Agreement provided each Plaintiff agree to the Defendant Bank's new terms on its outstanding obligations arising from its Brooke franchise purchase."

For their claims, plaintiffs first seek a declaratory judgment to the effect that defendant banks "are subject to all claims and defenses" that plaintiffs have or had against the Brooke entities. Specifically, plaintiffs allege that Brooke breached a fiduciary duty as broker for the purchases of plaintiffs' franchises by failing to disclose information and thereby inducing the purchases. Plaintiffs also allege that Brooke fraudulently induced their purchases by misrepresenting or omitting facts relating to the value of the franchises. Second, plaintiffs seek a declaration that the banks are not holders in due course with respect to plaintiffs' loans from Brooke, for six separate reasons. Third, plaintiffs allege that, because of Brooke's prior material breach of plaintiffs' franchise agreements, the banks cannot claim that plaintiffs have defaulted under their franchise agreements or that the banks' agreement to consent to the

termination of the franchise agreements was supported by consideration.[1]

Plaintiffs have also asserted affirmative claims against defendant banks (presumably, all defendants other than Aleritas). For their fourth claim, plaintiffs allege that the banks conspired to commit the fraud and breach of fiduciary duty alleged in the first declaratory judgment claim. Plaintiffs also assert a claim for punitive damages based on that conduct. Fifth, plaintiffs allege that the banks breached their financing or franchise agreements by failing to remit commissions and other amounts to plaintiffs. Sixth, plaintiffs assert a claim for money had and received, based on the banks' withholding commissions in violation of court orders in the Brooke bankruptcy case and agreements between the banks and the special master appointed to oversee Brooke's affairs.

## II. DZ Bank's Motion for Summary Judgment

Regardless of the outcome of defendants' motion to dismiss based on pleading deficiencies, DZ Bank moves for summary judgment on any claims against it.[2] Summary judgment is appropriate if the moving party demonstrates that there is "no

---

[1]Although this third claim is included in the section of the complaint relating to plaintiffs' affirmative claims against the banks, plaintiffs, in asserting a defense against Brooke in this claim, appear to be seeking a declaratory judgment relating to the banks' ability to enforce plaintiffs' contractual obligations.

[2]DZ Bank also argues that, assuming plaintiffs have not adequately pleaded their claims, it would be futile to allow them to re-plead, in light of DZ Bank's entitlement to summary judgment.

4

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

DZ Bank has provided an affidavit indicating that it owns only a single loan related to any of the plaintiffs in this action, specifically a loan to plaintiff Turney & Son, Inc. ("T&S"). With respect to plaintiffs' claims for breach of contract and money had and received, based on defendants' failure to remit commissions and other payments, DZ Bank seeks summary judgment based on its affidavit stating that it has remitted all payments to T&S and that no other payments are due. In response, plaintiffs have submitted an affidavit from Frank Turney, an officer and director of T&S, stating that T&S is owed certain commissions from the Brooke accounts taken over by DZ Bank and the other banks. DZ Bank has not addressed this apparent factual dispute in its reply brief. Accordingly, the Court concludes that an issue of disputed fact remains at this time and on this record, and it denies DZ Bank's motion for summary judgment on plaintiffs' breach of contract and money had and received claims.

With respect to plaintiffs' remaining claims, DZ Bank bases its motion for summary judgment on two acknowledgments executed by Mr. Turney on behalf of T&S. In October 2008, in exchange for DZ Bank's consent to the termination of T&S's franchise agreement (thereby allowing T&S to become agent of record with respect to its policies), T&S executed an acknowledgment in which it confirmed the pledge of its loan from Brooke to DZ Bank, the outstanding balance of the loan, and its obligation to repay the loan "without condition or deduction for any counterclaim, defense,

5

recoupment or setoff." In December 2008, in exchange for an additional loan of $10,000 and DZ Bank's forbearance on collecting loan payments for a period of four months, T&S executed an agreement in which it confirmed its "absolute and unconditional obligation" to pay off its loan "without setoff or counterclaim," and agreed to comply with the requirements of the loan documents. In its affidavit, DZ Bank also states that T&S has made all required payments on its loan. Based on this evidence, DZ Bank argues that, regardless of any defenses plaintiffs may allege (such as DZ Bank's failure to take the loan as a holder in due course), T&S is bound by its acknowledgments that it remains obligated under the loan. In support of this argument, DZ Bank relies only on cases indicating that, under Kansas law, such acknowledgments and partial payments bind an obligee. *See O'Malley v. Frazier*, 274 Kan. 84, 90-93, 49 P.3d 438, 443-45 (2002); *Security State Bank of Great Bend v. Midwest Foundry, Inc.*, 177 Kan. 151, 153-54, 277 P.2d 629, 630-31 (1954). Plaintiffs' primary argument in response, other than repeating their claims that defendant banks did not become holders in due course, is that T&S is not bound by the acknowledgments because it executed those documents while under economic duress.

In arguing these issues relating to the acknowledgments and the doctrine of economic duress, the parties have discussed only Kansas cases (and only a few cases at that). The parties have failed to consider, however, whether Kansas law should govern these issues. The Kansas Supreme Court has stated that a partial payment or other acknowledgment implies a new promise to pay the debt. *See O'Malley*, 274 Kan. at 92,

6

49 P.3d at 444. Indeed, both of the acknowledgments made by T&S were part of new agreements including promises by both parties. Under Kansas choice-of-law rules, the law of the place where the contract was made governs construction of the contract, while the law of the place of performance of the contract governs issues relating to performance. *See Aiken v. Employer Health Services, Inc.*, 1996 WL 134933, at *4 (10th Cir. Mar. 23, 1996) (unpub. op.), *cited in U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *16 (D. Kan. Aug. 4, 2008) (Lungstrum, J.). In this case, it appears that the acknowledgments were executed in Texas and that T&S was to make payments from Texas to DZ Bank, which is alleged to be a German company operating out of a New York office. Thus, under ordinary choice-of-law rules, Kansas law would not apply here.

It appears that the parties have assumed that Kansas law would apply generally in this case based on Brooke's headquarters in Kansas and the Kansas choice-of-law provisions in plaintiffs' loan and franchise agreements. It is not clear, however, that T&S's acknowledgments would be subject to those provisions. The acknowledgments themselves make no reference to the law that will govern disputes. The first acknowledgment provides that it is a "loan document," which may or may not have been intended to incorporate the loan documents' choice-of-law provision; the second acknowledgment contains no such provision, however.

In light of the parties' failure to address this issue of the governing law or to conduct any analysis under Texas law (which arguably governs here), the Court declines

7

to grant DZ Bank's motion for summary judgment, which was based entirely on the application of Kansas law.³ Accordingly, DZ Bank's motion for summary judgment is denied.⁴

### III. Defendants' Motions to Dismiss

*A. Governing Standards*

Defendants argue that plaintiffs have not satisfied the pleading standards set forth by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009). Those standards were summarized by the Supreme Court in *Iqbal* as follows:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard

---

³The Court also notes DZ Bank's failure to explain why plaintiffs' conspiracy claim would be precluded by the acknowledgments or how plaintiffs' allegations that DZ Bank conspired to induce the loan by fraud should affect the analysis concerning the acknowledgments.

⁴In light of this ruling, the Court need not consider plaintiffs' objections to DZ Bank's affidavit and exhibits.

8

> is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50 (citations and internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555-57, 570; Fed. R. Civ. P. 8(a)).

Shortly after *Twombly*, the Tenth Circuit described that opinion as one that "seeks to find a middle ground between 'heightened fact pleading,' which is expressly rejected, and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the [Supreme] Court stated 'will

9

not do.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citations omitted) (quoting *Twombly*, 550 U.S. at 555, 570). The Tenth Circuit also clarified the meaning of "plausible" under the *Twombly* standard:

> Thus, "plausible" cannot mean "likely to be true." Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Id.* (citations omitted) (quoting *Twombly*, 550 U.S. at 570). The Tenth Circuit noted that "[t]his requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

In one of their claims in the present case, plaintiffs have alleged a civil conspiracy. Applying these pleading standards in the context of an antitrust claim in *Twombly*, the Supreme Court held that a plaintiff may not merely allege the existence of a conspiracy, but must plead sufficient factual matter to suggest that an agreement was actually made. *See Twombly*, 550 U.S. at 556-57. The Tenth Circuit has confirmed that merely conclusory allegations that a conspiracy exists is not sufficient to state a claim under *Twombly*. *See Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1298 (10th Cir. 2008) (citing *Twombly*, 550 U.S. 544). Sufficient allegations of an agreement between conspirators would normally include details about the formation of that agreement. *See Twombly*, 550 U.S. at 565 n.10

10

Defendants also argue that plaintiffs have failed to plead their claims of fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b). Under that rule, plaintiffs' complaint must "set forth the time, place and contents of the false representations, the identity of the party making the false statements and the consequences thereof." *See Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted).

### *B.  Analysis*

Defendants argue that plaintiffs' second amended complaint fails to comply with the pleading standards set forth above. The Court agrees that the complaint is deficient in a number of respects, and it therefore concludes that plaintiffs' complaint is subject to dismissal.

1. First, defendants argue that plaintiffs improperly refer to "plaintiffs" and to "defendants" or the "defendant banks" generally in their complaint, without identifying which defendant has any relation to any particular loan involving any particular plaintiff. The Court agrees that plaintiffs' complaint is deficient in this manner. The seven plaintiffs appear to be separate parties or separate groups of related parties, although the complaint does not contain any allegations relating any one plaintiff to another. The separate defendants are entitled to know which plaintiff or plaintiffs are asserting claims against them specifically. Plaintiff are seeking relief with respect to specific franchise and loan agreements that they executed. The Court agrees with plaintiffs that they need not necessarily attach those agreements or provide specifics

11

about the terms of those agreements. Each plaintiff must, however, identify the particular defendant or defendants who allegedly seek to enforce those agreements. In the absence of such detail, each defendant will not have sufficient notice of the claims against it.[5]

Plaintiffs complain that they cannot know which banks are involved with each particular loan, that they will need discovery to determine those facts, and that they should be permitted to sue them all in the meantime. Plaintiffs have provided no authority allowing such an approach, however, and the Supreme Court has made clear that a plaintiff must state a plausible claim that a defendant is liable before it may engage in discovery. *See Twombly*, 550 U.S. at 557-60. Moreover, plaintiffs have alleged that they received letters from defendants in October 2008 regarding their loans; thus, plaintiffs should at least be able to identify which defendants purported to have been pledged their loans at that time.[6]

The Court also agrees that plaintiffs may not simply refer to "Brooke" generally in their complaint, but must identify which particular Brooke entity engaged in the conduct alleged. For instance, some of the alleged conduct apparently involves the

---

[5]For instance, it is unclear whether each plaintiff seeks to assert its conspiracy claim against all of the defendant banks or only against those banks that have assumed that plaintiff's particular loan.

[6]If, in fact, plaintiffs have not been threatened with enforcement of their loans by any particular defendant, then plaintiffs' declaratory judgment claims may not relate to an actual case or controversy, as required by Article III of the Constitution.

12

Brooke entity that acted as broker or franchisor, and some conduct involves Brooke's financing entity. Because plaintiffs seek to impose liability on defendants for the conduct of those entities and to assert defenses they may have against those entities, the identity of the particular Brooke entity at issue is important.

Plaintiffs argue that the various Brooke entities may be considered together because their particular corporate identities may be pierced. Plaintiffs' complaint does not identify, however, which two or more Brooke entities should be treated together on this basis with respect to any particular conduct or claim. Nor have plaintiffs alleged any facts supporting their claim that the separate corporate existences of the Brooke entities should be ignored.[7]

In summary, plaintiffs may not simply and generally allege that this group of defendants harmed them as a group based on their involvement with the group of Brooke entities. Such allegations do not provide defendants sufficient notice of the particular claims being asserted against them, and thus they do not state a plausible claim that any particular defendant is liable to any particular plaintiff.

2.      Defendants also challenge the sufficiency of plaintiffs' allegations relating specifically to their declaratory judgment claims. In general, plaintiffs appear to seek declarations that defendants may not enforce plaintiffs' particular loans, on the basis of

---

[7]The parties dispute whether Delaware or Kansas law should provide the standard for piercing the Brooke entities' corporate veils. The Court need not decide that issue at this time, as plaintiff has failed to allege *any* facts to support the application of that doctrine under any state's laws.

13

the Brooke entities' fraud, breaches of fiduciary duty, and breaches of contract, and on the basis of defendants' failure to take the loans as holders in due course. Plaintiffs have alleged that defendants failed to take as holders in due course for a number of reasons, including that defendants did not take those loans for value and that they took the loans with notice that they had been altered or contained an unauthorized signature. The Court does not agree with defendants that plaintiffs are required to provide specific details about the alleged alterations or unauthorized signatures or the other alleged reasons defendants did not take as holders in due course. In accordance with the requirement that each plaintiff identify the particular defendants against which it asserts claims, however, plaintiffs should also identify which of its theories regarding defendants' failure to take as a holder in due course apply to each specific loan.[8]

3. The Court agrees with defendants that plaintiffs have failed to allege specific facts sufficient to support their conspiracy claim. Plaintiffs have only conclusorily alleged that defendants conspired to commit fraud and breach of fiduciary duty. In response to this argument by defendants, plaintiffs cite only their allegation that defendants provided capital to Brooke with little oversight and while ceding control to Brooke despite "obvious conflicts in Brooke's business model and potential for fraud." Plaintiffs have failed, however, to allege any facts concerning any agreement reached

---

[8] In any amended pleading, plaintiffs should also make clear whether its prior material breach allegations relate to their declaratory judgment claims or represent a separate affirmative claim against any defendant. *See supra* note 1.

either between any two defendants or between any defendant and any Brooke entity. For instance, there are no details about the making of any such agreement. Nor are there facts from which one could plausibly infer the existence of such an agreement. The mere fact that defendants made loans to Brooke without maintaining control or oversight does not give rise to a reasonable inference that defendants were in fact conspiring with Brooke to harm plaintiffs—and thereby endangering the very assets securing defendants' loans to Brooke. Plaintiffs have not alleged facts supporting a plausible claim that defendants conspired against them.

4. In response to defendants' challenge to plaintiffs' fiduciary duty claim, plaintiffs insist that they have not asserted an affirmative claim against defendants on that theory, but that the alleged breach of fiduciary duty by Brooke relates only to their declaratory judgment claims. It appears from plaintiffs' complaint, however, that plaintiffs have also predicated their conspiracy claim on the underlying claim that the Brooke entities that brokered plaintiffs' purchases breached their fiduciary duties. Thus, in any amended pleading, plaintiffs must make clear the specific claims to which their fiduciary duty allegations relate.

In any amended complaint, plaintiffs should also make clear the effect that such a breach would have (for instance, making the loans or franchise agreements unenforceable) and how that effect relates to defendants, as that alleged effect is not apparent in the plaintiffs' second amended complaint. As defendants point out, according to the complaint, their relationship was to the Brooke financing arm, while one

15

or more Brooke entities breached fiduciary duties to plaintiffs while acting as broker for the purchase of the franchises. Thus, plaintiffs have not yet pleaded a plausible claim that any breach by a Brooke broker would cancel plaintiffs' loan obligations to defendants.

5. Defendants also challenge plaintiffs' allegations supporting their affirmative claims for breach of contract and money had and received. Defendants argue that plaintiffs should be required to identify the particular provisions of the particular contracts and orders that defendants allegedly breached by withholding commissions and other payments. In a simple contract case, a plaintiff might be allowed simply to allege that the parties to the lawsuit had a contract and that the defendant breached that contract by failing to pay, without providing further details. In this case, however, plaintiffs have alleged that defendants breached obligations under contracts to which defendants were not originally parties, and that they breached bankruptcy orders and settlement agreements to which plaintiffs may not have been parties. In these circumstances, plaintiffs must allege which contracts and orders defendants allegedly breached, in order that defendants may have adequate notice of the bases for plaintiffs' claims against them.

6. Finally, defendants argue that plaintiffs have not pleaded their fraud claims with particularity under Rule 9(b) and the standard set forth by the Tenth Circuit in *Koch*. The Court agrees that plaintiffs' fraud claims (including the claim of conspiring to commit fraud) are subject to dismissal on this basis. Plaintiffs do not dispute that they have failed to allege the particular details of the alleged misrepresentations and

16

omissions (date, location, specific contents, person making the representations). Plaintiffs argue only that defendants have been given sufficient notice of the claims. None of the cases cited by plaintiffs, however, suggests that the *Koch* standard may ever be disregarded in a case involving a fraud claim. Accordingly, plaintiffs' fraud claims are also subject to dismissal for this reason.

7. It is not clear that plaintiffs would not be able to cure some or all of these pleading deficiencies. Accordingly, plaintiffs are granted leave to file a third amended complaint, on or before May 14, 2010, by which they may attempt to satisfy the pleading standards discussed herein. If plaintiffs fail to file an amended pleading by that date, this action shall be dismissed.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant DZ Bank's motion for summary judgment (Doc. # 47) is **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendants' motions to dismiss plaintiffs' second amended complaint (Doc. ## 47, 48, 49, 50, 52, 57) are **granted**. Plaintiffs are granted leave to file a third amended complaint, on or before **May 14, 2010**, by which they may attempt to cure the pleading deficiencies noted herein. If plaintiffs do not file an amended complaint by that date, this action shall be dismissed.

IT IS SO ORDERED.

Dated this 29th day of April, 2010, in Kansas City, Kansas.

                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge