IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FRANK TURNEY, JR., et al.,                    )
                                              )
                    Plaintiffs,               )
                                              )
        v.                                    )        Case No. 09-2533-JWL
                                              )
DZ BANK AG DEUTSCHE ZENTRAL                   )
GENOSSENSCHAFTSBANK, et al.,                  )
                                              )
                    Defendants.               )
                                              )
_____)

## **MEMORANDUM AND ORDER**

In this action, four plaintiffs seek declaratory judgments and assert claims against

four defendants arising out of plaintiffs' purchase of insurance franchises from affiliates

of Brooke Corporation (collectively, "Brooke" or "the Brooke entities"). Defendants are

banks that, according to plaintiffs, provided financing to Brooke and now seek to enforce

loans made by Brooke to plaintiffs to finance the franchise purchases.

On April 29, 2010, the Court dismissed plaintiffs' second amended complaint, but

it allowed plaintiffs to amend to cure their pleading deficiencies (Doc. # 74). Plaintiffs

did file a third amended complaint,[1] and defendants have now moved to dismiss that

---

[1] By omission from the third amended complaint, plaintiffs have abandoned claims
on behalf of three other franchisees, claims against three other defendants, and a claim
that defendants conspired with Brooke to commit fraud, all of which had been asserted
in the second amended complaint.

complaint as well (Doc. ## 81, 82, 83, 87).  For the reasons set forth below, defendants'

motions are **granted in part and denied in part**.  The motions are granted with respect

to Counts I through X of plaintiffs' third amended complaint, and those claims are

hereby dismissed.  The motions are denied with respect to Count XI of plaintiff's third

amended complaint.  Plaintiffs' are also granted leave to file a fourth amended

complaint, on or before **October 1, 2010**, by which they may amend Count X to cure the

pleading deficiencies noted herein.

## I.     Plaintiffs' Claims

In their third amended complaint, plaintiffs allege as follows: The Brooke entities

brokered and sold insurance franchises.   Brooke Franchise Corporation, which later

became Brooke Capital Corporation ("Brooke Capital"), served as the franchising arm,

brokering the franchise sale and actually becoming the seller and franchisor.  American

Heritage, another Brooke entity, conducted due diligence and valued the sold business

as a going concern, for which services plaintiffs paid a fee.  Brooke Capital purported

to set the franchise purchase price based on American Heritage's valuation, but it

inflated the purchase price by misrepresenting and failing to disclose certain information

about the book of business being purchased.

Purchasers were required to finance the purchases through another Brooke entity,

Brooke Credit Corporation ("Brooke Credit").  Brooke Capital and Brooke Credit then

assigned their rights under the franchise agreement and loan agreement respectively to Brooke Agency Services Company ("BASC"). BASC financed the operation by borrowing from defendants and other banks, who took security interests in the franchise accounts and sales commissions. The banks delegated servicing responsibilities for the loans to a company that then delegated those responsibilities to a Brooke entity. In reliance on their security interests, the banks ceded control of underwriting, approval, and servicing to Brooke, with little oversight, despite obvious conflicts of interest.

In mid-2008, Brooke collapsed, as it ceased remitting payments to plaintiffs and defaulted on its obligations to the banks, who filed suit against Brooke. Under a settlement approved by the bankruptcy court, the banks gained control of the accounts containing the franchisees' commissions. Defendants now seek to enforce the loans made by Brooke Credit to plaintiffs.

In their first declaratory judgment claims (Counts I, V(B)[2]), plaintiffs allege that the Brooke entities "were used as a mere subterfuge and as an implement for fraud or illegality, and they seek a declaration that "defendants DZ Bank are [*sic*] subject to all claims and defenses [plaintiffs] have or have had against [the Brooke entities] and their assigns, and that such claims and defenses render [the franchise loans to plaintiffs]

---

[2]Plaintiffs' third amended complaint contains two different counts labeled as Count V.

unenforceable against [plaintiffs]."[3]   Plaintiffs have not identified those defenses explicitly in the declaratory judgment counts, although they allege fraud and breach of fiduciary duty by the Brooke entities in separate counts.  In their fraud counts (Counts III, VII), plaintiffs allege that Brooke Capital and American Heritage made misrepresentations and omissions regarding the true value of the franchises sold to plaintiffs, by failing to account for certain deductions and expenses, thereby inflating the purchase price, while Brooke Credit was aware of the misrepresentations.  Similarly, in their counts alleging breach of fiduciary duty (Counts II, VI), plaintiffs allege that Brooke Capital and American Heritage breached fiduciary duties to plaintiffs by failing to disclose information regarding the true value of the franchises, thereby effecting a fraud and inducing the purchases.[4]

---

[3]Although plaintiffs have used the plural with respect to defendants in these counts, they have named only defendant DZ Bank; thus it is unclear whether plaintiffs intended these claims to apply to the other defendants as well.

[4]Although plaintiffs allege generally in their fraud and fiduciary duty counts that they suffered damages, they have not set forth any basis in those counts for making defendants liable for any such tortious conduct by the Brooke entities.  Therefore, the Court interprets these counts as setting forth the defenses to which the first declaratory judgment counts refer.  That interpretation is consistent with plaintiffs' second amended complaint, in which the fraud and fiduciary duty allegations were included as part of the declaratory judgment claim, and with plaintiffs' statement in opposing the prior motions to dismiss that they did not assert an affirmative fiduciary duty claim.  Plaintiffs do not appear to have complied with the Court's instruction in its prior order that plaintiffs should make clear in any subsequent pleading the specific claims to which their fiduciary duty allegations relate.  *See* Memorandum and Order of Apr. 29, 2010, at 15.  If in fact plaintiffs have intended to assert affirmative claims seeking damages from defendants for fraud and breach of fiduciary duty, such claims would be subject to dismissal, for the
(continued...)

Second, in a separate count titled "Prior Breach" (Count IX), plaintiffs allege that Brooke Capital, Brooke Credit, and/or BASC, "or their assigns" breached obligations under plaintiffs' franchise agreements by failing to pay certain amounts, and that those entities violated plaintiffs' loan agreements by failing to account properly for commissions, by wrongfully "sweeping" accounts, and by wrongfully adding principal to the loans. Plaintiffs further allege that such "prior breaches" "eliminate any claim that Defendant Banks have that (1) Plaintiff Franchises are in default under the terms of the Franchise Agreements or Financing Agreements; or (2) termination of the Franchise Agreements in exchange for renegotiating the terms of the Financing Agreements was an offer made [by defendants] with consideration." Accordingly, although plaintiffs have made these allegations in a separate count, it does not appear that plaintiffs are asserting an affirmative claim against defendants based on contractual breaches by the Brooke entities; rather, they appear to be seeking a declaratory judgment relating to the banks' ability to enforce plaintiffs' contractual obligations, and the Court will treat this count as such.[5]

---

[4](...continued)
reason that, as noted above, plaintiffs have failed to allege a plausible basis for defendants' liability for torts committed by the Brooke entities.

[5]The second amended complaint was similarly confusing in this regard, which prompted the Court to give plaintiffs the directive that "[i]n any amended pleading, plaintiffs should also make clear whether its prior material breach allegations relate to their declaratory judgment claims or represent a separate affirmative claim against any defendant." *See* Memorandum and Order of Apr. 29, 2010, at 14 n.8. In light of
(continued...)

Third, plaintiffs seek declarations that defendants cannot enforce plaintiffs' loans because defendants are not holders in due course with respect to those loans, for six separate reasons (Counts IV, V(A), VIII).

Fourth, plaintiffs assert affirmative claims against defendants. Plaintiffs have brought a claim for breach of contract (Count X), alleging that defendants breached plaintiffs' financing or franchise agreements or the Brooke bankruptcy settlement agreement by failing to remit commissions and other amounts to plaintiffs. Plaintiffs also assert a claim for money had and received (Count XI), based on defendants' withholding commissions from plaintiffs.

## II.    **Governing Standards**

The Court will restate the standards set forth in its prior opinion. Defendants argue that plaintiffs have not satisfied the pleading standards set forth by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009). Those standards were summarized by the Supreme Court in *Iqbal* as follows:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-

---

[5](...continued)
plaintiffs' failure to follow that direct instruction, the Court will not interpret this count as asserting an affirmative claim against defendants. Moreover, any such claim would be subject to dismissal based on plaintiffs' failure to allege a basis for holding defendants liable for breaches by the Brooke entities.

unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50 (citations and internal quotations omitted) (quoting

*Twombly*, 550 U.S. at 555-57, 570; Fed. R. Civ. P. 8(a)).

Shortly after *Twombly*, the Tenth Circuit described that opinion as one that "seeks to find a middle ground between 'heightened fact pleading,' which is expressly rejected, and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the [Supreme] Court stated 'will not do.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citations omitted) (quoting *Twombly*, 550 U.S. at 555, 570). The Tenth Circuit also clarified the meaning of "plausible" under the *Twombly* standard:

> Thus, "plausible" cannot mean "likely to be true." Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Id.* (citations omitted) (quoting *Twombly*, 550 U.S. at 570). The Tenth Circuit noted that "[t]his requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

Defendants also argue that plaintiffs have failed to plead their claims of fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b). Under that rule, plaintiffs' complaint must "set forth the time, place and contents of the false representations, the identity of the party making the false statements and the

8

consequences thereof." *See Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted).

### III.    Declaratory Judgment Claims – Loans Subject to Claims and Defenses

As set forth above, in their first set of claims, plaintiffs seek a declaratory judgment (Counts I, V(A)) that defendants are subject to plaintiffs' defenses against the Brooke entities—specifically, fraud (Counts III, VII) and breach of fiduciary duty (Counts II, VI)—which render plaintiffs' loans unenforceable by defendants. Defendants argue that these claims fail because plaintiffs have not pleaded their fraud claims with particularity, in accordance with Fed. R. Civ. P. 9(b) and the Tenth Circuit's standard from *Koch*. In its prior order, the Court dismissed the fraud claims from plaintiffs' second amended complaint on this same basis, as follows:

> Plaintiffs do not dispute that they have failed to allege the particular details of the alleged misrepresentations and omissions (date, location, specific contents, person making the representations). Plaintiffs argue only that defendants have been given sufficient notice of the claims. None of the cases cited by plaintiffs, however, suggests that the *Koch* standard may ever be disregarded in a case involving a fraud claim.

Memorandum and Order of Apr. 29, 2010, at 16-17. The Court gave plaintiffs the opportunity to cure that deficiency in another amended complaint.

The Court agrees with defendants, however, that, despite the Court's prior reference to required allegations of "date, location, specific contents, person making the representations," plaintiffs have still failed to allege those necessary details concerning

their fraud claim. Plaintiffs have only alleged that the Brooke entities made misrepresentations and omissions in telling them the value of the franchises and in setting the purchase prices, in connection with eventual purchases by plaintiffs on specific dates. Thus, although plaintiffs have identified the subject of the alleged misrepresentations and omissions—the value of the franchises—they have not alleged the actual misrepresentations made by the Brooke entities (i.e., that the franchises are worth some specific amount). Plaintiffs have still not alleged the dates or locations or even the manner in which the representations concerning value were made. Plaintiffs note that they have alleged the dates of the transactions, and they point to the statement from *Sunbird Air Services, Inc. v. Beech Aircraft Corp.*, 789 F. Supp. 364 (D. Kan. 1992), that "where allegations of fraudulent conduct are numerous or take place over an extended period of time, less specificity is required to meet the requirements of Rule 9(b)." *See id.* at 366. Plaintiffs have not alleged that the misrepresentations were numerous, however, or that they took place over an extended period of time; rather, plaintiffs appear to allege simply that the Brooke entities lied when they told plaintiffs what the franchises were worth and what the purchase prices would be. Given the limited number of transactions here, plaintiffs were required to identify when and in what manner the alleged misrepresentations were made.

Finally, plaintiffs have also failed yet again to identify the person or persons who made the allege misrepresentations (or who provided information while omitting certain

facts). In arguing that allegations of fraud by an entity may be proper, plaintiffs cite to *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246 (10th Cir. 1997), but that case actually favors defendants here. In *Schwartz*, the Tenth Circuit held only that "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers." *Id.* at 1254. In this case, plaintiffs have not alleged a fraud based on statements in an annual report or similar corporate document, but instead based their claim on specific representations made only to them concerning the value of specific assets; accordingly, *Schwartz* does not provide any relief from the general rule requiring plaintiffs to identify the person making the alleged misrepresentations.

For these reasons, plaintiffs have failed to satisfy the particularity requirement of Rule 9(b), and the Court dismisses their fraud claims for that reason. Plaintiffs do not dispute that Rule 9(b) would also apply to their claims for breach of fiduciary duty, which are explicitly based on plaintiffs' fraud allegations. *Cf. Sheldon v. Vermonty*, 31 F. Supp. 2d 1287, 1295 (D. Kan. 1998) (Lungstrum, J.) (compliance with Rule 9(b) was not required where breach of fiduciary duty claim was not based on fraud). Therefore, the Court also dismisses plaintiffs' fiduciary duty counts for the same reason. Finally, these declaratory judgment counts were based solely on the defenses of fraud and breach of fiduciary duty (as plaintiffs failed to identify any other claim or defense against the

Brooke entities that could support a plausible claim for a declaratory judgment). Because those underlying claims have been dismissed, plaintiffs' declaratory judgment claims cannot stand, and they are also dismissed.

Plaintiffs' declaratory judgment counts (and also, therefore, the dependent fraud and fiduciary duty counts) are also subject to dismissal because of plaintiffs' failure to set forth in their complaint any facts or theory to show why the existence of such claims or defenses against the Brooke entities would render the loans unenforceable. In their opposition brief, plaintiffs argue that they have pleaded sufficient facts to support piercing the Brooke entities' corporate veils, thereby making each entity responsible for the wrongful conduct of the others. Plaintiffs have not explained, however, how such piercing would make the loans unenforceable. Moreover, plaintiffs' "piercing" allegations (that the Brooke entities shared an office, controlling executives and owners, employees, some expenses, a website, and a consolidated financial statement) are hardly sufficient to allow the Brooke entities' separate corporate forms to be ignored, under either Delaware or Kansas law. *See, e.g., Old Colony Ventures I, Inc. v. SMWNPF Holdings Inc.*, 1996 WL 707025, at *2-4 (D. Kan. Oct. 2, 1996) (Lungstrum, J.) (setting out Delaware law); *Doughty v. CSX Transp., Inc.*, 258 Kan. 493, 497-500 (1995) (setting out Kansas law).[6]

---

[6]In light of defendants' failure to analyze which state's law would govern plaintiffs' fiduciary duty claims, the Court will not address defendants' argument that those claims should be dismissed because of plaintiffs' failure to allege specifically that
(continued...)

## IV.   Declaratory Judgment Claim – Prior Breach

In Count IX, plaintiffs essentially seek a declaration that their franchise and loan agreements are unenforceable because of the Brooke entities' prior breaches of those agreements. Defendants seek dismissal of this count for various reasons. Plaintiffs have not responded to these arguments in their opposition brief. Accordingly, the Court deems this count to have been abandoned by plaintiffs, *see, e.g.*, *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1283 (D. Kan. 1997) (Lungstrum, J.) (plaintiff abandoned claim by failing to address it in response brief), and defendants' motions to dismiss this count are granted as uncontested, *see* D. Kan. R. 7.4.

Moreover, plaintiffs' pleading of this count is deficient. By this count, plaintiffs seek to excuse or discharge their obligations under the franchise and loan agreements because of prior breaches by the Brooke entities. The rescission of a contract or the discharge of obligations does not arise from every prior breach, however:

> The breach of contract must be material and the failure to perform so substantial as to defeat the object of the parties in making the agreement. A breach which goes to only a part of the consideration, which is incidental and subordinate to the main purpose of a contract, does not warrant rescission.

*See City of Shawnee, Kan. v. AT&T Corp.*, 910 F. Supp. 1546, 1552-53 (D. Kan. 1995)

---

[6](...continued)
the Brooke entities consciously assumed a fiduciary duty.

13

(Lungstrum, J.) (quoting *In re Estate of Johnson*, 202 Kan. 684, 691-92 (1969)).[7] In this count, plaintiffs allege that the Brooke entities breached the agreements by failing to pay premiums and other amounts to plaintiffs and by "sweeping" accounts and adding principal to the loans. Plaintiffs have not alleged any facts, however, to support an allegation that such breaches were material and so substantial as to defeat the main purpose of those contracts (the granting of the franchise and the loan of the purchase price), such that the breaches might excuse all performance by plaintiffs under those contracts. The Court therefore dismisses plaintiffs' prior material breach count for this additional reason.

## V.     Declaratory Judgment Claims – Holders in Due Course

In three counts (Counts IV, V(B), VIII), plaintiffs seek declarations that their loans are not enforceable because defendants are not "holders in due course," for six separate reasons that track the definition of "holder in due course" found in K.S.A. § 84-3-302. Defendants seek dismissal of these counts for various reasons. Plaintiffs have not included any argument relating to these counts in their opposition brief; therefore, plaintiffs are deemed to have abandoned these counts, and defendants' motions to

---

[7]The parties have generally applied Kansas law in this case, apparently based on Kansas choice-of-law provisions contained in plaintiffs' contracts and Brooke's location in Kansas. This requirement of a prior material breach is generally universal among the states, however, and thus this result would be the same regardless of whether another state's law should apply. *See, e.g.*, E. Allan Farnsworth, *Contracts* § 8.16 (2d ed. 1990).

dismiss them are granted as uncontested.

These counts are also deficient under the applicable standards. In their second amended complaint, plaintiffs alleged generally that defendants were not holders in due course for these same six reasons. In dismissing that complaint, the Court ordered plaintiffs, in any amendment, to identify which of those six reasons applied to each loan. *See* Memorandum and Order of Apr. 29, 2010, at 14. In their third amended complaint, plaintiffs separated this claim into three separate counts, linking the particular loans to particular defendants, but they still alleged all six reasons for denying holder-in-due-course status in each count. The Court agrees with defendants that such allegations—that all six reasons apply for each loan and for each defendant—are not plausible. As the Court noted in its prior order, ordinarily plaintiffs would not be required to provide specific details about alleged alterations or unauthorized signatures or other reasons, *see id.*; nevertheless, in this case, some factual support is required to move plaintiffs' allegations away from the type of boilerplate, conclusory, statute-tracking pleading that the Supreme Court has forbidden. In the absence of such factual support, plaintiffs' claims that each of the statutory reasons is applicable to each loan and each defendant is simply not plausible.

In these counts in their third amended complaint, plaintiffs have added a single factual allegation after three of the six reasons. While such factual statements might lend some support to the conclusory pleading of the six reasons, the plausibility is undermined

by the fact that the same factual allegations are mimicked in each of the three counts. Thus, plaintiffs have alleged that for each of four separate loans, indorsements have "in some instances" been backdated and "in other instances" contain signatures added "well after the fact." Viewing the allegations as a whole, the Court concludes that plaintiffs have not pleaded sufficient facts to make plausible claims that each defendant is not a holder in due course for each loan for the same six reasons, namely each reason set out in the statute.

These counts remain fundamentally flawed for another reason. Whether defendants may be holders in due course is relevant only to the extent that it makes plaintiffs' loans unenforceable (the declaration sought by plaintiffs)—otherwise, the exercise is academic and no justiciable controversy exists. A party might assert that it is a holder in due course in order to overcome some defense asserted by the party obligated on an instrument. *See, e.g.*, K.S.A. § 84-3-305(a). Thus, there must be an underlying defect or defense for plaintiffs to assert, in order for the holder-in-due-course analysis to become relevant. In their third amended complaint, plaintiffs have only pleaded the defenses of fraud, breach of fiduciary duty, and prior material breach, but those claims are subject to dismissal, as discussed above. Therefore, because no defense pleaded by plaintiffs remains, there is no reason for the Court to adjudicate defendants' holder-in-due-course status, and there is no support for plaintiffs' requested declarations that the loans are unenforceable.

## VI.   **Affirmative Claims**

### A.   *Jurisdiction*

The foregoing analysis leaves only plaintiffs' affirmative claims against defendants for breach of contract and for money had and received (Counts X, XI), relating to defendants' alleged failure to pay plaintiffs' commissions after the collapse of Brooke.  Defendants argue that, once the other claims have been dismissed, there is no longer diversity jurisdiction because the commissions at issue do not exceed the jurisdictional amount of $75,000.  The Court rejects this argument.  The relevant time for establishing the amount in controversy is the filing of the complaint.  "Just because the court dismisses certain claims, which reduce the amount of recovery, . . . does not necessarily destroy jurisdiction or prove that the plaintiff acted in bad faith." *Watson v. Blankinship*, 20 F.3d 383, 387 (10th Cir. 1994); *see also* 15 *Moore's Federal Practice* ¶ 102.104[3] (3d ed. 2010) ("If diversity jurisdiction existed at the time the case was filed, it is not affected by the dismissal of one of the claims, whether on motion to dismiss or summary judgment, even though the amount recoverable on the remaining claim is less than the required amount."); 14AA Charles A. Wright, et al., *Federal Practice and Procedure* § 3702, at 80 (2009) (in accord).

Defendants have not disputed that plaintiffs' entire complaint satisfied the amount-in-controversy requirement for diversity jurisdiction.  Therefore, the Court retains jurisdiction over plaintiffs' affirmative claims, even after dismissal of the other

claims.

B.    *Breach of Contract Claim*

In their claim for breach of contract (Count X), plaintiffs allege that defendants breached plaintiffs' financing or franchise agreements or the Brooke bankruptcy settlement agreement by failing to remit commissions and other amounts to plaintiffs. Defendants argue that such claims are barred on the face of those contracts, as plaintiffs are not parties to the bankruptcy settlement agreement, defendants are not parties to the franchise agreements, and the loan agreements contain no obligation to pay commissions.[8] In its prior order, in requiring plaintiffs to identify the particular contracts allegedly breached by defendants, the Court noted that plaintiffs had "alleged that defendants breached obligations under contracts to which defendants were not originally parties, and that they breached bankruptcy orders and settlement agreements to which plaintiffs may not have been parties." *See* Memorandum and Order of Apr. 29, 2010, at 16. Despite this warning, the third amended complaint still does not contain facts that would establish that a particular contract contained an obligation to pay plaintiffs and that defendants were bound by that obligation. Nor in their response brief have plaintiffs answered defendants' objection or explained specifically how defendants (non-parties to the franchise and loan agreements) may be held liable for breaching a particular

---

[8]If a document is central to the plaintiff's claim, the defendant may submit an indisputably authentic copy for consideration upon a motion to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

contractual obligation to pay money to plaintiffs, other than to insist that the complaint identifies the particular contracts on which their claim is based. Certainly by asserting a claim against defendants, plaintiffs have alleged that defendants had some obligation to make payments; such allegation is only conclusory, however, and plaintiffs have not alleged a plausible basis for holding defendants liable for breach of contract. Therefore, the Court dismisses plaintiffs' claim for breach of contract.

C.     <u>Money Had and Received Claim</u>

In their final claim, plaintiffs assert a claim for money had and received, based on defendants' alleged failure to pay commissions due to plaintiffs (Count XI). In its only argument for dismissal of this claim, defendants argue that such an equitable claim is barred because of the availability of an adequate remedy at law, namely, asserting the claim in the bankruptcy court under procedures set forth in the bankruptcy settlement agreement.

The Court rejects this argument for a number of reasons. First, defendants have cited a Texas case, *Stonebridge Life Insurance Co. v. Pitts*, 236 S.W.3d 201 (Tex. 2007), presumably because plaintiffs are located in Texas. Defendants have not undertaken any choice-of-law analysis, however, or attempted to explain why Texas law should apply in light of the potentially-relevant facts that any commissions were withheld by defendants outside of Texas and that the contracts that allegedly imposed the payment obligations had Kansas choice-of-law provisions or were executed in Kansas. *See, e.g.*,

*Edson Consolidated Sch. Dist. No. 2 of Sherman Co. v. School Dist. No. 64 of Sherman Co.*, 145 Kan. 847, 848 (1937) (in statute of limitations context, noting that claim for money had and received was essentially an action in quasi contract for restitution); *see also* Memorandum and Order of Apr. 29, 2010, at 6 (in prior order, noting parties' failure to address choice-of-law issue). It is not clear that all jurisdictions would deem this claim an equitable one or impose a requirement that no adequate alternative remedy at law exist for recovery for money had and received. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 47-48 (1989) (court will not sustain a bill in equity for payment of damages when the like amount "can be recovered at law in an action . . . for money had and received"); *Coppock v. J.C. Nichols Inv. Co.*, 146 Kan. 372, 374 (1937) (action for money had and received is one at law governed by equitable principles). Thus, in the absence of a choice-of-law analysis, the Court will not dismiss plaintiff's claim on this basis.

Moreover, even if Texas law were applied, the case cited by defendants, in dicta, states only that "some" equitable claims "may be" supplanted "in certain contexts" if an adequate legal remedy exists. *See Stonebridge*, 236 S.W.3d at 203 n.1. Such a statement in dicta hardly equates to a holding that the alternative-legal-remedy rule applies to all claims for money had and received. At this stage, the Court is not prepared to rule as a matter of law that plaintiffs' claim should be barred by the existence of the bankruptcy procedure. Therefore, defendants' motions to dismiss this claim are denied.

## VII.   Further Amendment

At the conclusion of their response brief, plaintiffs request another opportunity to amend to cure any pleading deficiencies found by the Court.  The Court, in its discretion, denies plaintiffs yet another opportunity to state cognizable declaratory judgment claims, in light of plaintiffs' failure to cure deficiencies noted by the Court in its prior order.  *See TV Comm. Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (failure to cure pleading deficiencies by previous amendments provides basis for denial of leave to amend).

In this case, plaintiffs have already filed four complaints, including two amendments filed in response to motions to dismiss by defendants.  With respect to the fraud claims, the Court identified for plaintiffs the particular details needed, and plaintiffs nevertheless failed to satisfy Rule 9(b) in their third amended complaint. Plaintiffs did not follow the Court's instruction to make clear whether the fiduciary duty claim related only to the declaratory judgment claim or constituted a separate affirmative claim.  Plaintiffs also failed to comply with the Court's instruction to make clear the bases or theories for holding defendants liable for conduct by one or more Brooke entities.  With respect to the prior material breach count, plaintiffs ignored the Court's direction to state whether such claim was intended as part of a declaratory judgment claim or as a separate affirmative claim, and plaintiffs did not see fit to address that claim in their response brief.  Similarly, plaintiffs failed to address the holder-in-due-

course claim in their response, and they continued to rely in boilerplate fashion on all of the statutory reasons despite the Court's instruction to link specific reasons to specific defendants. (In addition, there is no basis for amendment of the holder-in-due-course claim in the absence of an underlying defense to the loans, as explained above.) Even with respect to the affirmative contract claim, plaintiffs did not heed the Court's instruction to make clear the basis for defendants' obligation and liability. For these reasons, the Court concludes that plaintiffs should not be afforded yet another opportunity to cure their deficiently-pleaded declaratory judgment claims.

Nevertheless, because plaintiffs' affirmative claim for money had and received remains, the Court will allow plaintiffs a final opportunity to amend their companion claim for breach of contract (Count X), to cure the pleading deficiencies noted herein with respect to that count. If plaintiffs intend to amend that count, they shall file a fourth amended complaint on or before **October 1, 2010**.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motions to dismiss plaintiffs' third amended complaint (Doc. ## 81, 82, 83, 87) are **granted in part and denied in part**. The motions are granted with respect to Counts I through X of plaintiffs' third amended complaint, and those claims are hereby dismissed. The motions are denied with respect to Count XI of plaintiff's third amended complaint. Plaintiffs' are also granted leave to file a fourth amended complaint, on or before

22

**October 1, 2010**, by which they may amend Count X to cure the pleading deficiencies noted herein.

IT IS SO ORDERED.

Dated this 20th day of September, 2010, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge